**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| Stephanie H., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 3:23-cv-50023 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| Martin J. O'Malley, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| *Defendant.* | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Stephanie H. brings this action under 42 U.S.C. § 405(g) seeking reversal or a

remand of the decision denying her application for supplemental security income.[2] For the reasons

set forth below, the Commissioner's decision is reversed, and this case is remanded.

**I. Background**

On June 17, 2020, Plaintiff filed an application for supplemental security income alleging

a disability beginning on the date of her application[3] because of Crohn's disease, lymphocytic

colitis, chronic gastrointestinal problems, pancreatic issues, arthritis, gastrointestinal reflux

---

[1] Martin J. O'Malley has been substituted for Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 9.

[3] In her motion, Plaintiff faults the ALJ for stating her alleged onset date was June 17, 2020, despite Plaintiff alleging her disability began on April 1, 2019. Pl.'s Mot. at 1, Dkt. 13. Although Plaintiff's application for supplemental security income identifies her disability beginning on June 17, 2020, Dkt. 207, the record refers to both April 1, 2019 and June 17, 2020 as Plaintiff's alleged onset date. *Compare* Dkt. 84 *with* Dkt. 106. Regardless, for SSI benefits, Plaintiff must demonstrate that she was disabled during the time her application was pending, namely June 17, 2020, through the date of the ALJ's decision on July 21, 2022. *See* 20 C.F.R. §§ 416.330, 416.335. However, an "ALJ must consider *all* of the relevant evidence in the case record; even records pre-dating the alleged onset date to the extent those records shed light on her conditions during the relevant time period." *Ciske v. Kijakazi*, No. 20-CV-1154, 2021 WL 4133958, at *2 (E.D. Wis. Sept. 10, 2021). Plaintiff does not argue that the ALJ failed to consider any records predating June 17, 2020.

disease, and anxiety. R. 85, 207. She also suffers from degenerative disc disease of the lumbar spine and cervical spine, carpal tunnel syndrome, migraines, and depression, among other conditions. R. 20–21. Plaintiff was 40 years old at the time she filed her application.

Following a hearing, an administrative law judge ("ALJ") issued a decision in July 2022, finding that Plaintiff was not disabled. R. 17–34. The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine status post two infusions, degenerative disc disease of the cervical spine, Crohn's disease with history of colitis, anxiety disorder, and major depressive disorder. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with certain restrictions. The ALJ determined that Plaintiff had no past relevant work, but that there were other jobs that existed in significant numbers in the national economy that she could perform, namely sedentary, unskilled jobs.

After the Appeals Council denied Plaintiff's request for review on January 11, 2023, R. 1, Plaintiff filed the instant action. Dkt. 1.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."

*Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

### III. Discussion

Plaintiff makes several arguments challenging the ALJ's RFC determination relating to her mental and physical limitations. One of these arguments is that the ALJ failed to adequately explain his mental RFC determination and account for her moderate limitations in interacting with others. For the reasons discussed below, the Court agrees that remand is required on this issue.

A claimant's RFC is the maximum work she can perform despite any limitations. 20 C.F.R. § 416.945(a)(1); SSR 96-8p, 1996 WL 374184, at \*2. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment. 20 C.F.R. § 416.945(a)(3); SSR 96-8p, 1996 WL 374184, at \*5. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at \*13 (N.D. Ill. Feb. 2, 2012) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)). "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)).

Here, the ALJ found that Plaintiff had the severe mental impairments of anxiety disorder and major depressive disorder. The ALJ also found that Plaintiff's mental impairments resulted in a moderate limitation in her ability to interact with others. Based on this mental limitation, the ALJ determined that Plaintiff could perform work with: "frequent interaction with the public." R. 23.

In formulating the mental RFC, the ALJ relied on the only two opinions in the record regarding Plaintiff's mental functional capabilities and limitations. R. 30. Both state agency psychologists found that Plaintiff's severe anxiety and depression resulted in moderate limitations in her ability to interact with others. R. 90–91, 108–09. They further found that Plaintiff's "capacity to navigate social interactions is moderately impaired by social anxiety," and that she should be limited to a "work setting with limited social demands." R. 101, 112. The first state agency psychologist explained that Plaintiff's mental impairments resulted in a functional limitation on "her ability to interact with more than incidental contact with others in the workplace." R. 91.[4] In making this finding, the psychologist relied heavily on Plaintiff's February 2021 psychological consultative examination because it provided the most recent mental status examination and evaluation of Plaintiff. R. 91.

At her psychological consultative examination, Plaintiff reported struggling with anxiety, always feeling like people were looking at her, and being uncomfortable in social scenarios. R. 1036. Psychiatric consultative examiner Chirag Raval, M.D. reported that Plaintiff looked uncomfortable, was fidgety and shaky, and "on the verge of tears." R. 1037. He found Plaintiff had an anxious affect but noted she was cooperative, and her stream of conversation was adequate. Plaintiff had difficulty completing math calculations, and Dr. Raval opined "[a]nxiety may have played a role." R. 1038. Dr. Raval's summary concluded that Plaintiff was "suffering with a lot of

_____

[4] The first state agency psychologist's opinion was affirmed in November 2021. Dkt. 113.

4

anxiety," was in treatment in the past, and was taking psychotropic medications. He assessed her

with social anxiety disorder, generalized anxiety disorder, and mild to moderate major depressive

disorder. However, Dr. Raval did not provide any functional RFC limitations.

The ALJ found the state agency psychologists' opinions, assessing a moderate limitation

in interacting with others and restricting Plaintiff to performing work with limited social demands,

persuasive because they were "consistent with the evidence available upon time of review." R. 30.

However, the ALJ did not adopt an RFC with "limited social demands" or "incidental contact" as

identified by the state agency psychologists. Instead, the ALJ "further defined the claimant's

mental residual functional capacity consistent with the hearing level evidence of the claimant's

mental functioning." R. 30. The ALJ stated that although Dr. Raval did not provide specific, work-

related mental limitations, he considered Dr. Raval's examination results in formulating Plaintiff's

mental RFC. The ALJ ultimately concluded that despite Plaintiff's difficulties in social settings,

she maintained an "adequate ability to engage frequently rather than constantly with the public."

R. 28.

Plaintiff argues that the ALJ's RFC determination fails to accommodate her moderate

limitations in interacting with others. In response, the Commissioner argues that the ALJ's decision

should be affirmed because Plaintiff "cannot name a single mental limitation unfairly omitted from

the RFC." Def.'s Resp. at 2, Dkt. 19. The Commissioner relies on *Jozefyk v. Berryhill*, 923 F.3d

492 (7th Cir. 2019), which is distinguishable. In *Jozefyk*, the court found any flaws in the ALJ's

RFC assessment harmless because there was no evidence in the record that would support a more

limited RFC. 923 F.3d at 498. Unlike *Jozefyk*, the record in this case does contain such evidence.

The state agency psychologists, whose opinions the ALJ found persuasive, found that Plaintiff's

social anxiety resulted in moderate mental limitations that required a "work setting with limited

social demands" and no more than "incidental contact with others in the workplace." R. 101. Yet, the ALJ found Plaintiff capable of sustaining interaction with the public up to two-thirds of an eight-hour workday. *See* Social Security Ruling 83-10, 1983 WL 31251, at *6 ("'Frequent' means occurring from one-third to two-thirds of the time.").

The Commissioner acknowledges that the ALJ did not merely adopt the state agency psychologists' opinions on Plaintiff's mental functioning, but instead "translated limited social demands to allow frequent public interaction." Def.'s Resp. at 2, Dkt. 19. The Commissioner argues that "the ALJ broke in no meaningful way from the opinions and properly found them persuasive." Def.'s Resp. at 2–3, Dkt. 19. This Court disagrees because the Commissioner offers nothing in support of finding these limitations interchangeable.

The state agency psychologists, and the ALJ, found that Plaintiff's severe mental impairments caused moderate limitations in interacting with others. The regulations explain that this area of mental functioning "refers to the abilities to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00(E)(2). Although the state agency psychologists found that Plaintiff had a moderate limitation in interacting with the public in the checklist portion of their opinions, they did not indicate that Plaintiff's restriction to limited social demands applied only to her interactions with the public.

Despite finding the state agency psychologists' opinions persuasive, the ALJ made no attempt to address whether Plaintiff's moderate limitations in interacting require limitations related to coworkers and supervisors. The ALJ also makes no attempt to explain why limiting Plaintiff to frequent interaction with the public sufficiently accommodated her limitations considering the state agency psychologists' opinions restricting Plaintiff to "incidental contact." R. 91. The ALJ said nothing about Plaintiff's need for incidental contact with the public, or her coworkers and

6

supervisors. *See Walton v. Berryhill*, No. 1:17-cv-00763-RLY-TAB, 2017 WL 6015807, at \*3-4 (S.D. Ind. Nov. 14, 2017) (concluding that ALJ erred in incorporating some functional limitations similar to reviewing physicians' opinions and adopting other less restrictive limitations with "no basis in the record."). This Court cannot reconcile the ALJ's decision to find the state agency psychologists' opinions persuasive and consistent with the evidence and yet include less restrictive social interaction limitations in the RFC.

"While the ALJ was not required to adopt the state agency psychologist's opinion in its entirety, he was required to build a 'logical bridge from the evidence to his conclusion.'" *Mack v. Berryhill*, No. 16 CV 11578, 2018 WL 3533270, at \*3 (N.D. Ill. July 23, 2018) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). If the ALJ did not mean to adopt all of the state agency psychologists' limitations, he must say so clearly and explain the basis for his RFC. The ALJ did not do so here.

The Commissioner maintains that the ALJ provided reasonable support and explanation for his translated RFC by pointing to evidence that Plaintiff was cooperative at examinations and testified to getting along with others and engaging in social media. However, the ALJ did not offer any explanation for why these records support a limitation to frequent interaction with the public and it is not otherwise self-evident.

The ALJ acknowledged Plaintiff's reported discomfort in social settings and the Dr. Raval's findings that she appeared anxious and tearful and had difficulty with calculations. R. 28. Yet, the ALJ noted that notwithstanding, Plaintiff's mental status examinations were typically within normal limits, citing to several medical records that reported a normal mood and affect and cooperation with providers. R. 28. However, the state agency psychologists had most of this evidence when they formulated their opinions about Plaintiff's ability to interact. The record

indicates that Plaintiff has reported mental health issues since childhood and has been taking psychotropic medications well before she filed her application. The state agency psychologists acknowledged that Plaintiff had "a fair response to treatment, and a mental status and ADLs that are reasonably intact." R. 91. Nevertheless, they still found that Plaintiff's mental impairments resulted in limitations in her ability to interact with others in the workplace. In doing so, the state agency psychologists afforded "[s]ignificant consideration" to the findings of Dr. Raval because he provided the most recent mental status examination and evaluation of Plaintiff. R. 91. That remains unchanged.

The only records the ALJ cites after the November 2021 state agency psychologist's opinion are: (1) a December 2021 emergency room visit for rectal bleeding, which noted Plaintiff's mood and affect were normal; and (2) a May 2022 consultative examination for Plaintiff's physical impairments, which noted that Plaintiff was cooperative, had a normal affect, and had no signs of anxiety. R. 22, 28 (citing R. 3682). However, the ALJ offers no explanation of how these records, where the physicians appeared to perform only a limited mental status examination within the context of an evaluation for a physical impairment, support his mental RFC assessment.

The ALJ also cites to Plaintiff's testimony that she got along with others and engaged in social media. Plaintiff's testimony at the hearing was limited to the following exchange with the ALJ:

> Q: Get along with people okay?
> A: Yes.
> …
> Q: What social media do you use?
> A: Instagram
> Q: Anything else, Tik Tok, anything else?
> A: No.
> Q: Facebook?
> A: I have one, but I don't' really go on it much.

R. 67–68. Again, the ALJ offers no explanation for how this limited testimony discredits her social anxiety in the workplace. Moreover, the function reports in the record indicate that while Plaintiff was able to interact with family and friends on the phone, she did not spend time with others and rarely left her house. R. 237–41, 264.

Although not mentioned by the Commissioner, the ALJ also relied on the fact that Plaintiff had no recent psychiatric hospitalization, no consistent treatment by a mental health professional since the application date, and psychotropic medication managed by Plaintiff's primary care physician. R. 28. However, this evidence was explicitly considered by the state agency psychologists, and Dr. Raval, when they rendered their opinions. R. 91, 1036–38. As such, it is unclear how this evidence is supportive of a less restrictive interaction limitation.

The state agency psychologists' opinions are the only opinions of record regarding Plaintiff's mental functional capabilities and limitations and the only opinions relied on by the ALJ in finding Plaintiff had moderate difficulties in interacting with others and in formulating Plaintiff's mental RFC. Yet, the ALJ chose to discard portions of those opinions in his RFC without any meaningful explanation of how the evidence supports limiting Plaintiff to only frequent interaction with the public. Without this explanation, the ALJ failed to build a logical bridge between the evidence and his mental RFC determination. *See Jarnutowski*, 48 F.4th at 773 ("[E]ven under this deferential standard of review, an ALJ must provide a logical bridge between the evidence and [his] conclusions.") (internal quotation marks and citation omitted). Accordingly, a remand is required for further consideration of Plaintiff's mental RFC as it relates to her limitations in interacting with others. In remanding this case, the Court is not indicating that a particular result should be reached on remand. Instead, the ALJ must consider all the evidence

9

relating to Plaintiff's mental impairments and sufficiently explain his reasons for the RFC limitations.

In light of this Court's remand for a new RFC determination, it will not address Plaintiff's remaining arguments. However, Plaintiff's counsel should raise all issues argued on appeal with the ALJ on remand, both in a pre-hearing brief and at the administrative hearing. Failure to explicitly raise these issues may result in a waiver if this case is again appealed to this Court.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceeding consistent with this opinion. This Court declines to order a finding of disability based on the record before it. It is more appropriate to remand to the ALJ to properly evaluate the evidence as outlined above and issue a new decision.


Date: March 13, 2024                    By:    Lisa A. Jensen
                                               United States Magistrate Judge